J-S35004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN G. SLUTZKER | |
| Appellant | No. 1881 WDA 2015 |

Appeal from the PCRA Order November 4, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006520-1991

BEFORE:  LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 7, 2017**

Steven Slutzker appeals from the order, entered in the Court of Common Pleas of Allegheny County, denying his petition filed under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, ("PCRA").  We affirm.

John Mudd, Sr., was shot and killed on December 28, 1975.  Slutzker, who had been romantically involved with the victim's wife, Arlene Mudd, was charged with criminal homicide and two counts of solicitation to commit murder.[1]  At the coroner's inquest, the homicide charge was dismissed.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Solicitation of Michael Pezzano to commit murder (CP-02-CR-000589-1976), and solicitation of Stephen E. Harston to commit murder (CP-02-CR-000610-1976).  18 Pa.C.S.A. § 902.

Slutzker was convicted of one count of solicitation, at CP—02-CR-0000589-1976) and sentenced to 11½ to 23 months' imprisonment.[2]

The homicide case, dormant for years, was reopened in 1991 when the victim's son, John Mudd, Jr., a child at the time of the murder, suddenly recalled the events of that night. Mudd claimed that during an emotional argument, he was flooded with images from that night, including one of Slutzker talking with his mother, who was also a suspect in the murder investigation. Based on Mudd's statement and a review of the initial investigation, Slutzker was arrested and again charged with murder.

Following a jury trial in January 1992, Slutzker was convicted of first-degree murder for the 1975 homicide of John Mudd, Sr. Following conviction, the court sentenced Slutzker to life imprisonment. On direct appeal, this Court affirmed, *Commonwealth v. Slutzker*, 638 A.2d 271 (Pa. Super. 1993) (Table), and the Pennsylvania Supreme Court denied a subsequent petition for allowance of appeal. *Commonwealth v. Slutzker*, 537 Pa. 631 (Pa. 1994) (Table).

Slutzker filed a PCRA petition in 1997, which was denied. Denial of collateral relief was affirmed on appeal, and, thereafter, Slutzker filed a petition for habeas corpus in federal district court. The federal district court

---

[2] Slutzker appealed and this Court affirmed his judgment of sentence. *Commonwealth v. Slutzker*, 393 A.2d 1281 (Pa. Super. 1978). The solicitation case is not before us.

granted habeas corpus relief. The Commonwealth appealed, and the Court of Appeals for the Third Circuit affirmed. *See Slutzker v. Johnson*, 393 F.3d 373 (3d Cir. Pa. 2004) (affirming grant of habeas corpus relief on ground that prosecution's failure to disclose twenty-one police reports denied Slutzker due process, and on ground that trial court failed to compel victim's wife to testify).

Following a new trial in 2007, Slutzker was again convicted of first-degree murder, and the court sentenced him to life imprisonment. On March 16, 2010, this Court affirmed his judgment of sentence, *Commonwealth v. Slutzker*, 996 A.2d 556 (Pa. Super. 2010) (Table), and, on September 28, 2010, the Pennsylvania Supreme court denied Slutzker's petition for allowance of appeal. *Commonwealth v. Slutzker*, 608 Pa. 639 (Pa. 2010) (Table).

Slutzker filed a *pro se* PCRA petition on January 3, 2011. The court appointed counsel, Christopher M. Boback, Esquire, and directed counsel to file an amended petition. Thereafter, Attorney Boback filed an amended petition on March 15, 2011, and the Commonwealth filed a reply. Slutzker then filed a *pro se* motion for withdrawal of counsel. Following two evidentiary hearings on Slutzker's PCRA claims, and denial of all relief, the court ultimately granted counsel leave to withdraw and appointed the Office of Conflict Counsel to represent Slutzker. Patrick Nightingale, Esquire, was appointed to represent Slutzker. Slutzker again filed a *pro se* motion

seeking to have counsel removed. Attorney Nightingale then filed a motion to withdraw, which was denied.

Slutzker renewed his request to have counsel removed on May 5, 2014, advising the court that Erika P. Kreisman, Esquire, would agree to the appointment. The court granted the request; Attorney Nightingale withdrew, and Attorney Kreisman entered her appearance.

Attorney Kreisman filed an amended PCRA petition. The PCRA court held a hearing on two of Slutzker's ineffectiveness claims: trial counsel's failure to call several character witnesses, and counsel's failure to impeach the testimony of Slutzker's daughter, Amy Slutzker.[3] The court denied Slutzker's remaining claims without a hearing.

Following the evidentiary hearing, the PCRA court denied relief. Slutzker filed a timely appeal, and the court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal by February 2, 2016.[4] Slutzker raises the following issues for our review:

_____

[3] Amy Slutzker testified that, on the night of the murder, she recalled her father getting a handgun from a dresser drawer, leaving their home for a time, and then returning and taking her to the home of Janet and Patrick O'Dea. She testified that she had always remembered these events, but was afraid of her father, and so she never revealed what she knew until her father asked her to testify on his behalf. PCRA Court Opinion, 7/6/16, at 4.

[4] The PCRA court's order stated that "[t]he appellant is notified that that any issue not properly included in the Statement timely filed and served pursuant to Pa.R.A.P. 1925(b) shall be deemed waived[.]" PCRA Court Order, 12/8/15. Thereafter, on February 23, 2016, the court struck the Rule

*(Footnote Continued Next Page)*

1. Was trial counsel ineffective for failing to present impeachment witness Monica McIlvain?

2. Was trial counsel ineffective for failing to present good character evidence?

3. Was trial counsel ineffective by failing to request a *Kloiber*[5] cautionary instruction about Cynthia DeMann's identification of [Slutzker]?

4. Did appellate counsel Douglas Sughrue ineffectively fail to appeal the denial of the motion *in limine* [precluding questioning] Janet (O'Dea) Feiling [about criminal charges of which she was acquitted]?

5. Was [Slutzker] represented ineffectively when counsel did not read Arlene Mudd's coroner's inquest testimony to the jury because she was unavailable?

6. [Whether . . . trial counsel was ineffective for failing to object to the prosecutor questioning his alibi witnesses, the O'Deas,] "Isn't it possible" [that Slutzker might have left their house]?

7. Was trial counsel ineffective in not filing a motion *in limine* [to preclude testimony about] an alleged visit by [Slutzker] to John Mudd, Jr.'s job at the pizza parlor, [his place of employment]?

*(Footnote Continued)* ———————

1925(b) statement, as it has appended to it documents not admitted into evidence. The court directed defense counsel, within seven days of the date of the order, to "file an Amended Concise Statement of Matters Complained of on Appeal with the documents improperly attached to the original one removed." PCRA Court Order, 2/23/16. On February 26, 2016, Attorney Kreisman filed a 22-page "Second Concise Statement of Matters Complained of on Appeal," raising fourteen claims of trial and appellate counsel ineffectiveness, and one claim of trial court error. That same day counsel filed an "Addendum to Concise Statement of Matters Complained of on Appeal," raising additional claims. The PCRA court, "in the interests of judicial economy," did not review or consider the improperly attached documents or the addendum to the Rule 1925(b) statement.

5 ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).

8. [Whether trial and appellate counsel were ineffective for failing to argue that John Mudd, Jr. was incompetent to testify due to hypnosis?

9. [Whether trial and appellate counsel were ineffective for failing to pursue the issue of missing discovery]?

10.    [Whether trial and appellate counsel were ineffective for failing to challenge the imposition of a life sentence of incarceration]? [6]

11.    Did trial attorney Mark Rubenstein offer ineffective assistance of counsel when he failed to bring an investigator to the interview with Commonwealth witness Kimberly Altman Adkin?

Appellant's Brief, at 2-3.

Preliminarily, we note that "[o]ur standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170 (Pa. Super. 2008). We will not disturb the PCRA court's factual findings "unless there is no support for [those] findings in the certified record." *Commonwealth v. Melendez–Negron*, 123 A.3d 1087, 1090 (Pa. Super. 2015).

When analyzing ineffectiveness claims, "[w]e begin . . . with the presumption that that counsel [was] effective." *Commonwealth v. Spotz*, 18 A.3d 244, 259–60 (Pa. 2011). "[T]he [petitioner] bears the burden of proving ineffectiveness." *Commonwealth v. Ligons*, 971 A.2d 1125, 1137

_____

[6] For clarity, we have replaced some of the language in Slutzker's issues and replaced it with the Commonwealth's wording, in brackets, as stated in the Commonwealth's counter-statement of the issues involved.

(Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* An ineffectiveness claim will be denied if the petitioner fails to establish any one of these prongs. *Id.*

After a review of the parties' briefs, the relevant case law and the certified record on appeal, we agree with the PCRA court that Slutzker is not entitled to collateral relief. The PCRA court's findings are supported in the record, and we find no error of law. We, therefore, rely upon the Honorable Jeffrey A. Manning's opinion in affirming the order denying PCRA relief. We instruct the parties to attach a copy of that decision in the event of further proceedings in the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

V.

STEVEN G. SLUTZKER

ORIGINAL
Criminal Division
Dept. of Court Records
Allegheny County, PA.

CRIMINAL DIVISION

NO. CC ~~1999~~06520
1991

OPINION OF THE COURT

The Honorable Jeffrey A. Manning.
President Judge

Counsel of Record for the Parties

ERICA KRESIMAN, ESQ.

1034 Fifth Avenue
Suite 400
Pittsburgh PA 15219

For the Defendant

RONALD M. WABBY, JR., ESQ.
DEPUTY DISTRICT ATTORNEY

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219
(412) 350-4377

For the Commonwealth

FILED
16 JUL -7 PM 3: 06
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

1

# IN THE COURT OF COMMON PLEAS FIFTH JUDICIAL DISTRICT
## ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,     CRIMINAL DIVISION

v.     CC No.: 199106520

STEVEN SLUTZKER,

Defendant.

## **OPINION**

The defendant, Steven Slutzker, has appealed from this Court's denial of his Petition for Post Conviction Collateral Relief. In his Concise Statement of Matters Complained of on Appeal, the defendant identifies 14 distinct claims. In an Addendum to the Concise Statement, he raised five more claims. Because the addendum was not timely filed, having been filed on February 26, 2016 when this Court directed that the Concise Statement be filed before February 2, 2016, those claims will not be addressed and shall be deemed waived.[1]

Before addressing the claims, it is necessary to recount the long procedural and factual history of this matter. This Court, in its Opinion filed June 2, 2008, set forth the relevant history:

---

1.This Court issued an Order dated February 23, 2016 striking the Concise Statement filed by counsel on January 20, 2016 because counsel attached documents to the pleading that had not been offered or admitted into evidence. Counsel failed to file an Amended Concise Statement as Ordered. In the interests of judicial economy and because this case and this record have been delayed, this Court has elected to address the issues raised in the original Concise Statement but will not review or consider the documents improperly attached.

2

This case involves the December 28, 1975 murder of John Mudd, Sr. The defendant, who had been involved romantically with the victim's wife, Arlene Mudd, was arrested on January 12, 1976 and charged with one count of criminal homicide and one count of criminal solicitation to commit criminal homicide. The solicitation charge arose from the defendant's unsuccessful attempt to hire an individual named Michael Pezzano to kill the victim. Pezzano reported this to the Pennsylvania State Police who were in the process of investigating Pezzano's claims when John Mudd, Sr. was killed. Although the criminal solicitation charge was held for trial at the coroner's inquest, the coroner determined that that the Commonwealth failed to establish a *prima facie* case on the homicide charge and it was dismissed. The Commonwealth proceeded with the prosecution on the solicitation charge and the defendant was found guilty. He was sentenced to not less than 11½ nor more than 23 months in prison and was paroled sometime in 1978.

The investigation into the Mudd murder remained dormant for nearly fifteen years. It was reopened in 1991 when the victim's son, John Mudd, Jr., contacted the police and claimed that he had suddenly recalled the events surrounding his father's murder and could identify the defendant as being present in his home on the night his father was murdered. He explained that during an emotional argument he recently had, he was suddenly flooded with images from that evening, including images of the defendant in his home talking to his mother, who was also a suspect in the killing.

Based upon the statement of John Mudd, Jr. and a review of the evidence gathered at the time of the initial investigation, the defendant was arrested and again charged with murder in the death of the victim. He was tried by a jury in January 1992. In addition to testimony from John Mudd, Jr., the Commonwealth presented several other witnesses who did not testify at the coroner's inquest and who came forward either before or during trial and testified against the defendant. These witnesses included the defendant's daughter, Amy Slutzker, who testified that she saw her father retrieve a handgun from a dresser drawer and leave their residence for a time on the night that John Mudd, Sr. was killed. He returned and immediately took her to the home of Janet and Patrick O'Dea. She said that she had always remembered these events but was afraid of her father and never revealed what she knew until her father

3

contacted her prior to the 1992 trial and asked her to testify on his behalf. Joseph Lindsey also came forward and testified that several months before John Mudd, Sr. was shot he encountered the defendant at a swap meet and the defendant asked him to show him how to operate an automatic weapon. The victim was killed with an automatic weapon. Moreover, this testimony impeached the defendant's claim that he had never handled an automatic weapon. Finally, Sandra Catone testified that during an argument she was having with the defendant (her landlord) in the mid 1980's, he told her that he had killed a man in Wilkinsburg in the seventies.

The jury found the defendant guilty of first degree murder. He was sentenced to life imprisonment. The Superior Court affirmed the judgment of sentence and a subsequent Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied. The defendant then filed a Petition under the Post Conviction Collateral Relief Act, Pa. C.S.A. § 9501, *et. seq.* in 1997. Following a hearing, that Petition was denied. That denial of relief was affirmed on appeal.

Defendant thereafter filed a *Pro-Se* Petition for Habeas Corpus in the United States District Court for Western District of Pennsylvania in December, 1999. Defendant served a subpoena on the Wilkinsburg Police Department and was provided approximately 28 reports that he claimed had not been provided to his trial counsel, the late Charles Scarlata. The United States District Court concluded that one of the reports, memorializing an interview of witness Cynthia DeMann, was material in that it was inconsistent with her trial testimony. To remedy this violation of Brady,[2] the defendant was awarded a new trial. The matter was remanded to this Court for trial. The defendant filed several pre-trial motions seeking to bar his re-trial and seeking to have this Court recuse from the matter. Those motions were denied after hearing and the re-trial commenced in January 2007, resulting in the defendant's conviction and subsequent appeal.

*(Slip Opinion, June 2, 2008, pp. 2-3).*

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

4

The judgment of sentence was affirmed by the Superior Court on March 16, 2010. The defendant's Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied October 18, 2010. The defendant then filed a Pro Se Post Conviction Collateral Relief Act (PCRA) Petition on January 3, 2011. Counsel was appointed and an Amended Petition was filed on March 15, 2011. The Commonwealth filed a Reply on April 15, 2011. Defendant then sought the removal of counsel and, by order dated October 25, 2011, counsel's appearance was withdrawn and new counsel was appointed.

After several extensions of time, newly appointed counsel also sought leave to withdraw by Motion filed March 27, 2013 which was in response to the defendant's Motion seeking to have counsel removed which he filed on March 13, 2013. That Motion was denied.

However, on May 5, 2014 the defendant renewed his request that counsel withdraw and advised the Court that current counsel would agree to be appointed. Prior counsel's appearance was withdrawn and current counsel entered her appearance. She filed an Amended Petition and then two Addendums to the Petition. This Court scheduled an evidentiary hearing to address the defendant's claims that counsel was ineffective for failing to present several character witnesses and for failing to present a witness to impeach the testimony of Commonwealth witness, Amy Slutzker. All of the remaining claims were denied without hearing.

5

Before turning to the individual claims, it is important to set forth the general legal principles that govern Post Conviction Relief Act matters. A defendant in such proceedings claiming that counsel was ineffective should be granted relief only if they prove, by a preponderance of the evidence, that their conviction or sentence resulted from "... ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S. § 9543(a)(2)(ii). Counsel is presumed to have been effective and only will be deemed not to have been effective upon a sufficient showing by the defendant. Commonwealth v. Dennis, 950 A.2d 945,954 (Pa. 2008). Relief will only be granted if a defendant demonstrates that counsel's performance was deficient and that the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984). Prejudice is only established if a defendant demonstrates that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

When the ineffectiveness claim is that trial counsel failed to present certain witnesses, the Strickland ineffectiveness test will only be met if the defendant establishes the following: 1) the witness existed; 2) the witness was available to testify for the defendant; 3) counsel knew of, or should have known, of the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony of the witness

6

was so prejudicial as to denying the defendant a fair trial. Commonwealth v. Washington, 927 A.2d 586, 599 (2007). We will now apply these principles to the defendant many claims.

The defendant's first claim is that counsel was ineffective for failing to call Monica McIlvain as a witness to impeach the testimony of Amy Slutzker Musselman. Ms. Musselman, the defendant's daughter, testified against her father at trial. She told the jury that though she was a young child at the time, she had a present recollection of being at home with her father the night that the victim was killed. She remembered this because it was the last night she ever spent in that home and she never saw John Mudd, Jr. again. She said that she saw her father get up, retrieve a silver object she thought was a gun and leave their home. She then heard several loud bangs and began to notice police lights outside. When she went downstairs to look for her father, she found him in the living room. (T.T. IV 46-55).

When cross examined, she explained that, although she always remembered that this had occurred, she was afraid to discuss it and never revealed to anyone what she saw that night. She said that she decided to come forward with what she saw after her father visited her prior to his trial in 1992 and asked her to testify for him. She said that she was afraid of her father and although initially agreeing to do so, called the police as soon as he left to tell them what she did know. She testified at both of the defendant's trials.

7

Ms. McIlvain, the defendant's former sister-in-law, testified at the PCRA hearing that prior to the defendant's arrest in 1992 she spoke with Amy on a regular basis and that between the time of his arrest and trial. She said that Amy told her that she thought her father was innocent; that she could not believe he had been arrested. The defendant contends that counsel was ineffective for not presenting her testimony to impeach his daughter.

While it is clear from her testimony that this witness was known to defense counsel and was ready, willing and able to testify, it is also clear that her lack of testimony was not prejudicial to the defendant. First, the Court would note that Amy Slutzker Mussleman testified that she did not tell anyone what she remembered about that night prior to her father's visit to her on the eve of his first trial. She said that she was afraid of him and told no one what she knew. Accordingly, it is not particularly damaging to her credibility that she did not share with her aunt, who was still married to her Father's brother at the time, the damning information she had about her father's activities that night. Accordingly, it is not necessarily impeachment for Ms. McIlvain to testify that Ms. Mussleman made statements inconsistent with her trial testimony. This was particularly true given that Ms. McIlvain was, at the time, married to her father's brother. Ms. Musselman said that she was afraid of her father which would explain her reluctance to say anything bad about her father to this witness. Any impeachment value that

8

Ms. McIlvain's testimony might have provided was greatly diluted by these facts. Accordingly, the Court concludes that the defendant was not prejudiced by counsel's failure to present Ms. McIlvain to impeach Amy Slutzker Mussleman.

The defendant also seems to infer in the Concise Statement that she raised a claim that counsel was ineffective for failing to present testimony from Ms. McIlvain concerning Ms. Musselman's reputation for truthfulness and honesty. The record reflects that no such testimony was offered from Ms. McIlvain. She was never asked any questions regarding her niece's reputation for truthfulness and honesty. Accordingly, any such claim is wholly without merit.

The defendant next complains that trial counsel was ineffective for failing to call a number of character witnesses. Norman Slutzker, Ron Padlof and Benny Desiderato. Norman Slutzker testified that his brother's reputation for being law abiding citizen "...before the last trial..." was that he was "...law abiding in every manner.." (H.T. 17)[3]. Her claimed to have discussed his brother's reputation with former customers of the defendant as well as with 14 members of a musical group to which he belonged. (H.T. 16-18). He said that he discussed testifying as a character witness for the defendant with trial counsel and was present at trial and willing to testify. (H.T. 20).

---

[3] Numerals in parentheses preceded by the letters "H.T" refers to the page of the transcript of the PCRA hearing held on August 25, 2015. Numerals in parentheses preceded by the letters "T.T." and roman numerals refer to pages and volumes of the trial transcript.

9

On cross-examination, he admitted that the defendant's conviction for solicitation to commit murder was inconsistent with him being law abiding. He also said that he was not aware that the defendant's neighbors feared him or that his own daughter, Amy, feared him. (H.T. 23-24). He also acknowledged that he had never actually discussed his brother's reputation with the people he described as having a good opinion; he simply "...never heard them say anything bad about...|" him. (H.T.25) Finally, he had no idea if any of those he referenced as having not heard anything bad about his brother knew that he had been convicted of trying to hire someone to kill John Mudd. (H.T. 26).

Benny Desiderato testified that the defendant worked with him and that the defendant had a good reputation for being law abiding among his customers. (H.T. 29). He was not aware, however, that the defendant had been convicted of soliciting someone to murder John Mudd. He admitted, further, that that conduct would not be law abiding. (H.T. 32). He also was not aware that the defendant's neighbors and daughter were afraid of him.

Finally, Ronald Padlof testified that the defendant was a family friend and that he had worked for him (H.T. 34). When asked about the defendant's reputation, he said, "Nobody ever said anything bad about him....). (H.T. 35). He went on to say that he had a "good reputation...for being law abiding." (H.T. 35). He was aware that the defendant had been

10

convicted of trying to hire someone to murder John Mudd and acknowledged that that was not "law abiding." (H.T. 37).

As the Commonwealth pointed out at the PCRA hearing, this Court conducted a colloquy with the defendant, through counsel, regarding the decision not to present character evidence. The defendant was present when the Court inquired of trial counsel as to whether the defendant understood he was permitted to call character witnesses and whether the decision not to call them was his decision. If the defendant had an objection at the time, he could have raised it then. That colloquy established that defense counsel discussed whether or not to call character witnesses with the defendant and the decision was made not to call them. (T.T. VII 54-56, 69). Counsel is presumed effective. The defendant has offered nothing to establish that what counsel represented at that time, that the defendant was aware of his right to present character evidence and that they had agreed not to, was not truthful. Trial counsel was deceased at the time of the hearing. The only other party to any discussions regarding character witnesses, the defendant, chose not to testify. Accordingly, the only evidence regarding the decision to not present character witnesses is the on the record colloquy. Given that, and the fact that the defendant has presented nothing to rebut the presumption that counsel was effective, this claim was properly dismissed.

Next, the defendant claims that counsel was ineffective for not requesting a Kloiber instruction concerning the testimony of Cynthia

11

DeMann.  Ms. DeMann testified that on the night of the shooting of John Mudd she looked outside and saw the defendant standing next to and speaking to Arlene Mudd.  In her initial statement to the police, taken that night, she said that she did not know the identity of the person speaking with Arlene Mudd.  It is this inconsistency that the defendant claims required that the jury be given the instruction discussed in Commonwealth v. Kloiber,  106 A.2d 820 (1954).

A Kloiber charge is appropriate where there are special identification concerns, such as: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past.  Commonwealth v. Reid, 99 A.3d 427, 448 (Pa. Super. 2014).  Ms. DeMann did not "fail" to make an identification because she did not have a clear opportunity to identify the defendant; she did not equivocate in her identification and never had difficulty identifying him.  She intentionally did not identify the defendant to the initial investigators because she was afraid of the defendant.  She testified to this at trial.  It is well settled that "...prior inconsistent statements based upon fear of endangerment do not equate to a prior failure of ability to identify a defendant."  Supra, 449.  Because Ms. DeMann did not fail to identify the defendant, counsel was not ineffective for not requesting a Kloiber instruction.

12

Similarly, as there was no basis to seek suppression of Ms. DeMann's identification, counsel was not ineffective for failing to pursue a Motion to do so. The law cited by defendant in the Concise Statement deals with suggestive pre-trial identification. There was no 'pre-trial" identification by Ms. DeMann. Ms. DeMann testified that she knew the defendant and saw him outside her home with Arlene Mudd on the night of the murder of John Mudd. She falsely claimed to not have known who the man was when she was initially interviewed, but explained that she did so out of fear of the defendant. That inconsistency may have been relevant to whether the identification was credible, but not as to its admissibility.

The defendant contends that appellate counsel was ineffective for failing to appeal the decision by this court to not bar the Commonwealth from asking Janet Feiling if she has been accused of having tried to hire another person to kill John Mudd. The defendant contends that this impermissibly allowed the impeachment of Ms. Feiling through an arrest that did not lead to a conviction. Ms. Feiling was not asked about an arrest and the jury was not told of an arrest.

The Commonwealth offered this evidence to show that the defendant had, in fact, used this witness to solicit the murder of the victim in this case. Such testimony established a chain of events that would show that the defendant was planning to kill the victim, and not to attack the credibility of the witness. As shown below, such testimony is admissible.

13

Pa.R.E. 404(b) states the following:

**(b) Other crimes, wrongs, or acts.**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

(4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Here, pursuant to Pa.R.E. 404(b)(2), evidence of Ms. Feiling's solicitation to have the victim killed is clearly relevant and probative because it links both the planning and preparation to defendant. Therefore, the dismissal of this claim without a hearing was appropriate.

Next, defendant attempts to, once again, re-litigate the issue of the repressed memory of John Mudd, Jr., claiming that counsel was ineffective for not presenting expert evidence to try to have Mudd's testimony excluded. There are two problems with this claim. One, counsel has not bothered to identify the expert that she claims trial counsel should have

14

called, provided an inkling of what this witness would have said or claims that such witness even exists. Second, this claim was previously litigated in this case and the evidence was found to be admissible. The law of the case doctrine, in the absence of a change in the applicable law, would require that this Court not revisit that ruling.

Defendant claims trial counsel was ineffective for failing to present the coroner's inquest testimony of the victim's wife, Arlene Mudd. Ms. Mudd testified at a coroner's inquest in 1976. Thereafter, whenever called to testify, she invoked her fifth amendment privilege against self incrimination. She was subpoenaed for the defendant's second trial and her counsel, Sumner Parker, advised the Court and counsel that she would do so again. Though there was a discussion of admitting her prior testimony into evidence, neither party did so.

As current counsel points out, there is no record establishing why trial counsel did not seek to admit the transcript from the coroner's inquest. She could not call defense counsel because of his death. She chose not to present her client to establish what, if any, discussion he had with trial counsel regarding the admission of the prior testimony. As trial counsel is presumed to have effectively represented his or her client and the burden is on a defendant contending otherwise, in the absence of proof that there was no reasonable basis for counsel's decision, the claim must fail.

15

In his eighth claim defendant contends that counsel was ineffective for not objecting when the prosecutor asked an alibi witness if it was possible for the defendant to have left their presence the night of the shooting. The defendant's alibi was that he was at the O'Dea residence the night of the shooting. Asking an alibi witness if it was possible that the defendant was not in their presence for any of the relevant time period is entirely appropriate cross examination, particularly when, as here, the alibi witness admits to have been asleep for much of the time period in question. This claim is specious.

Next, the defendant complains that counsel was ineffective for not filing a motion *in limine* to prevent any reference to a visit the defendant made to the pizza place where John Mudd, Jr. worked. When the prosecutor attempted to make reference to this visit, defense counsel objected and the objection was sustained. As a jury is presumed to follow the instructions of the Court, there is no basis to assume that the jury considered this at all. Nor has the defendant explained how this prejudiced him. This claim was properly dismissed without a hearing.

The defendant next argues that trial counsel was ineffective for not objecting to the testimony of Dr. Abdulrezak Shakir from the Allegheny County Medical Examiner's Office.[4] According to the defendant, Dr. Shakir simply read the original coroner's report into the record. This is simply not

---

[4] He also claims appellate counsel was ineffective for not raising this claim on appeal.

16

the case. Dr. Shakir reviewed the report and reached his own conclusions as to the cause of death. (TT,.V 57-80). Further, Dr. Shakir was subject to cross-examination. (TT.V 81-83). Consequently, this claim was properly denied without a hearing.

In his eleventh claim, the defendant contends that trial and appellate counsel were ineffective for failing to prove and argue that the testimony of John Mudd, Jr. was tainted through hypnosis. This claim is belied by the Superior Court Opinion, which concluded:

> Even if we were to conclude **Judd** is applicable to this matter, we have no hesitance in concluding Slutzker's evidence of taint present at the time of the motion *in limine* is far from being sufficient to challenge the competency of the witness on a charge of taint (again, assuming the concept of taint is applicable to adult witnesses testifying about events that occurred when they were five years old). "An allegation of taint must be supported by clear and convincing evidence." **Judd**, 897 A.2d at 1228 (citing **Commonwealth v. Lukowich**, 875 A.2d 1169, 1173 (Pa.Super. 2005), *appeal denied* 584 Pa.606, 885 A.2d 41 (2005)). Slutzker did not meet this standard.

Slip Opinion, at 29. Since the Superior Court held that the defendant's proffered evidence that the testimony was tainted was insufficient, neither trial nor appellate counsel were ineffective and this claim was properly denied without a hearing.

Next, the defendant claims that appellate counsel was ineffective for not raising on appeal the claim that trial counsel was ineffective for not securing all required discovery from the Commonwealth. The defendant has not set forth, in his Concise Statement, what discovery materials he was not

17

provided and how he was prejudiced thereby. The claim was properly dismissed without a hearing.

The defendant, in a Second Addendum to his PCRA, claimed that he was entitled to relief from the mandatory life sentence imposed pursuant to Miller v. Alabama, 132 S.Ct. 2455 (2012), which banned the imposition of mandatory life sentences without the possibility of parole on juveniles. The defendant was not a juvenile. He was born October 26, 1950, making him 25 years old on the date John Mudd was murdered.

Finally, in his fourteenth claim, the defendant contends that Mark Rubenstein, one of his attorney's at trial, was ineffective for interviewing a trial witness without the presence of an investigator. According to the defendant, Kim Altman, who was dating John Mudd, Jr., said during this interview that she heard John Mudd., Jr. refer to the man who killed his father as "Steve" before he had his alleged flashback recall. Defendant complains that this left counsel without the ability impeach Ms. Altman. Counsel could have impeached Ms. Altman. He could have asked her if she told Mr. Rubenstein that John Mudd, Jr. had referred to the man who killed his father by the name, Steven, prior to the alleged sudden recall. And, if she said she had not, he could have presented Mr. Rubenstein to testify as to this prior statement. Mr. Rubenstein testified at the PCRA hearing was he was not longer lead counsel by the time the matter proceeded to trial, that he was more of a trial consultant and that he examined no witnesses. The

18

only thing that would have happened had he testified is that he would no longer have been permitted to sit at counsel table. (H.T. 43).

In addition, there was no prejudice. Had Kim Altman's prior statement that she heard John Mudd Jr. refer to his father's killer by the name "Steve" before the alleged sudden recall been admitted it could not possibly have changed the outcome of the trial given the overwhelming weight of evidence establishing the defendants' guilt.

For the reasons set forth, this Court's judgment dismissing the Defendant's PCRA Petition should be affirmed.

BY THE COURT:

_____, P.J.

Date:  July 6, 2016

19